UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 23 CR 00012 (JEB) |
| | : | |
| ANTHONY GLENMORE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of 41.5 months[1] of incarceration; the government further requests that the Court impose a period of 3 years of supervised release. In support of this sentence, the government states the following:

**I.      Factual Summary**

On April 3, 2023 the defendant pled guilty to one count of Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). The defendant accepted a factual proffer in support of his guilty plea that included the following facts:

1.      On December 17, 2022, Officers Cruz and Kelly were in a marked police vehicle at the 2000 block of Georgia Avenue, Northwest. As they were driving, the officers observed the defendant walking with a camouflaged backpack southbound towards U Street, Northwest. The defendant seemed to notice the officers as they drove by, and the officers conducted a U-turn in

---

[1] The Government had originally computed the defendant's criminal history score as an eight based on the fact that the initial pretrial services report represented that the defendant's supervised release was revoked on June 3, 2008, in 2003 FEL 000944. After reviewing the draft presentence report and confirming with the United States Parole Commission, the Government learned that the defendant's supervised release in 2003 FEL 000944 was never revoked. Therefore, consistent with the presentence report calculation, the defendant's criminal history score is a five. The defendant's

1

the 2000 block of Georgia Avenue, Northwest. Officer Kelly subsequently noticed that the defendant's backpack appeared to be heavy with an object inside.

2. The officers then pulled alongside the defendant and Officer Kelly rolled down the car window and asked the defendant if he had a gun in the backpack. The defendant denied that he had a gun. When Officer Kelly asked the defendant a second time whether he had a gun the defendant started walking away at a fast pace. Officer Kelly then called out to the defendant, exited the vehicle and started chasing the defendant who began running away. As Officer Kelly was chasing the defendant, he yelled for the defendant to drop the gun. The defendant then dropped the backpack which Officer Kelly picked up. The defendant tried to scale a building as depicted in **Figure 1** but was detained by Officer Cruz.



**Figure 1**

offense level remains 19 and thus the guideline range is between 37-46 months.

2

3. Officer Kelly unzipped the backpack and saw a firearm and a wallet which contained the defendant's identification as depicted in **Figures 2, 3 and 4**. The recovered firearm (Black, Intrac Arms, HS2000) contained 9mm ammunition and had 14 rounds in a magazine that had the capacity to hold 16 rounds. Subsequent fingerprint analysis resulted in three latent prints of value that were taken from the magazine. The three latent prints were compared and identified as the fingerprints of the defendant.


**Figure 2**


**Figure 3**



**Figure 4**

4.      A records check revealed that Glenmore does not possess a license to carry a firearm or ammunition within the District of Columbia. In addition, on January 16, 2008, the defendant was convicted of Voluntary Manslaughter While Armed (knife) and Carrying A Dangerous Weapon in D.C. Superior Court No. 2006 CF1 017525. In that case, Glenmore was sentenced to 180 months of imprisonment and 5 years of supervised release. On October 26, 2022, the defendant was transferred by the Federal Bureau of Prisons to the Volunteers of America Halfway House and placed on home confinement on November 9, 2022.

## II.     Procedural History

On January 10, 2023, a federal grand jury returned a one count indictment charging the defendant with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). On April 3, 2023, the defendant pleaded guilty pursuant to a negotiated plea agreement. *See* ECF No. 12. Under the agreement, the defendant pleaded guilty to Count 1 and the

government agreed to cap its allocation at the midpoint of the sentencing guidelines. *See* ECF No. 12 at 1, 4.

### III. Sentencing Factors

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

1. <u>Statutory Penalties and the U.S. Sentencing Guidelines</u>

The offense of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), carries with it a maximum sentence of 15 years of imprisonment; a fine of $250,000; and a term of supervised release of not more than three years.

A. <u>Offense Level Calculation</u>

The government agrees with the sentencing guidelines as calculated within the presentence report. The base offense level is governed by U.S.S.G. § 2K2.1(a)(3)(A)(i) and (B) (22 points). The defendant has demonstrated acceptance of responsibility for the offense and the offense level is decreased by two levels under U.S.S.G. § 3E1.1(a) and an additional level by timely notifying the Government of his intention to enter a plea of guilty. Therefore, the

defendant's total offense level is at 19.

### B. Criminal History Category

The defendant has the following prior convictions (resulting in 3 criminal history points) and committed the instant offense while under supervision in 2006 CF1 017525 (resulting in an additional 2 criminal history points), and therefore has a total of five points and is in Criminal History Category III:

- Count E:  Attempt Distribution of Cocaine; Count F: Attempted Possession With Intent to Distribute Marijuana (2003 FEL 000944) [0 points, 4A1.2(e)(3)];

- Count 2: Simple Assault (2006 CMD 005125)  [0 points, 4A1.2(e)(3)];

- Count 1: Voluntary Manslaughter While Armed; Count 2 Carrying Dangerous Weapon -Outside Home/Business (2006 CF1 017525) [3 points, 4A1.1(a)]; and

- Count 1: Attempted Threats to do Bodily Harm (2009 DVM 002126) [0 points, 4A1.2(e)(3)]

### C. Argument

The nature of this offense is serious, and this is the defendant's fifth adult criminal conviction; he has been arrested thirteen times.  Two felony convictions and two misdemeanor convictions have not deterred the defendant from possessing a firearm.  More disturbing is that the defendant was still serving his sentence in home confinement on a 15-year sentence for Voluntary Manslaughter While Armed when he was arrested.  Specifically, the defendant was authorized by the Federal Bureau of Prisons to go to the Department of Motor Vehicles (DMV) at 95 M Street, Southwest.  The defendant did not go to the DMV, instead he was arrested at 3:35 p.m. at the 700 block of V Street Northwest with the firearm.

The defendant has repeatedly committed crimes for over 20 years and has squandered multiple opportunities for rehabilitation.  The defendant's first adult arrest was for Attempt Distribution of

Cocaine in February of 2003.  In that case, an undercover officer bought two zip lock bags of cocaine from the defendant for $19.  When officers tried to arrest the defendant, he attempted to flee, but once arrested, he was found with 39 zip lock bags of marijuana and 7 clear zip lock bags of cocaine.  *See* Draft PSR ¶8.  The defendant was then given a probationary sentence and was later rearrested for assault with a dangerous weapon (knife) on June 6, 2004.  Although that case was ultimately dismissed, the defendant's probation was nonetheless revoked after he was again arrested on probation – this time with a firearm on November 26, 2004.  The firearm offense was no papered, but the defendant was resentenced to 16 months of imprisonment. *See* Draft PSR ¶7.  On March 16, 2006, the defendant yet again arrested and ultimately convicted by a jury for Simple Assault for punching an individual in the face with a closed fist.  *See* Draft PSR ¶9.  While on pre-trial release in the simple assault matter, on July 30, 2006, the defendant stabbed John Stapleton in the chest after an argument.  He then left Mr. Stapleton laying on the ground and he was ultimately found dead by officers. A jury found the defendant guilty of  Voluntary Manslaughter in 2006 CF1 17525 and the defendant was sentenced to 180 months of incarceration. *See* Draft PSR ¶11.  He was then released and committed to the Volunteers of America Halfway House on October 26, 2022.  He was subsequently resentenced to home confinement on November 9, 2022 and arrested on the instant offense on December 17, 2022.

Even while in prison, the defendant failed to comply with the law.  On June 23, 2008, a complainant reported that she received a letter from the defendant who is the father of her child which stated: "You only live once and die once.  Life can be given and life can be taken away.  With that said I want you to wake up now because you on your way to sleeping forever."  *See* Draft PSR ¶14.  The defendant sent this letter *after* he was convicted of Voluntary Manslaughter while Armed.  The complainant understandably viewed the letter as a threat, especially since there was a history of

7

domestic violence in their relationship. *Id.* The defendant was subsequently charged with two counts of attempted threats in 2009 DVM 002126 and was found guilty on one count on April 10, 2012.

The defendant has also had multiple violations while in prison as well. On January 21, 2010, the defendant attempted to assault another inmate with a knife and was placed in segregation for 60 days. *Id.* On May 24, 2010, the defendant possessed heroin while in prison and was sanctioned by a loss of forty days of good conduct time. *See* Draft PSR ¶12. The defendant was further sanctioned for masturbating in front of staff members on seven separate occasions between 2015 and 2021. *See* Draft PSR ¶12. His sanctions for these offenses gradually escalated, from loss of good time credit to loss of commissary, email, and phone privileges. On December 28, 2017, the defendant attempted to mail out instructions on how to bring in synthetic cannabinoids to the prison and was sanctioned thirty days of good conduct time and eighteen months of phone and visitation privileges. *Id*. On June 12, 2022, the defendant assaulted another individual and was sanctioned twenty-seven days of good conduct time and ninety days of commissary, email and visitation privileges. *See* Draft PSR ¶13.

The defendant's criminal history illustrates a lack of impulse control and shows he is someone who has repeatedly made the wrong choices. His choices involve threats and violence, with one of his choices resulting in the loss of a man's life. This criminal history coupled with his access to firearms makes the defendant particularly dangerous. Courts have emphasized the *inherent* dangerousness of carrying a concealed, loaded firearm on one's person. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *see United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when

defendant's prior convictions indicate a predilection for violence.)

In Washington D.C., the rate of violent crimes committed with guns in the continues to rise: between September 19, 2020 and September 19, 2023, violent crimes committed with a gun went up by 2,651 citywide compared to the previous three years. *Crime Cards*, Metro. Police Dep't. https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited Sept. 19, 2023). Similarly, the homicide rate has skyrocketed, with the past two years having the highest homicide rates since 2003: In 2022, there were 203 homicides, and in 2021, 226 homicides. *District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison*, Metro. Police Dep't, https://mpdc.dc.gov/page/district-crime-data-glance (last visited Sept. 19, 2023). There have already been at least 192 homicides in 2023, a 30% increase from this time last year. *Id.* By comparison, in 2012, there were 88 homicides. *Id.*

The defendant Glenmore – despite being a prohibited person – possessed a loaded weapon, and he did so while still under home confinement in 2016 CF1 01725. The defendant was given an opportunity to gradually reenter society and despite that opportunity, the defendant was unable to obey the law and was found with a firearm. The defendant's actions illustrate his inability to comply with condition of release, that he has not been rehabilitated, and that he continues to be a danger to the community.

### IV.     Conclusion

For the foregoing reasons, the government recommends that the Court sentence the defendant to a sentence of 41.5 months of incarceration to be followed by a term of 3 years of supervised release. The government submits that a sentence of 41.5 months of imprisonment is an appropriate sentence, which serves to protect the community, punish the defendant for his criminal conduct, and deter others from committing similar offenses. The government submits that a

sentence of 41.5 months of imprisonment serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

        Respectfully Submitted,
        MATTHEW GRAVES
        UNITED STATES ATTORNEY

BY:     /s/
        SHEHZAD AKHTAR
        D.C. Bar No. 493635
        Assistant United States Attorneys
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        Telephone: (202) 252-7498
        E-mail: Shehzad.Akhtar@usdoj.gov